## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDUARDO SANTOS, | ) | Case No. 23- cv-221-WES-PAS |
| LYDIA CAMACHO, | ) | |
| EDUARDO SANTOS and | ) | |
| LYDIA CAMACHO as Parent and | ) | |
| Guardian of ES, | ) | |
| EDUARDO SANTOS as parent | ) | |
| of JS, | ) | |
| LYDIA CAMACHO as Parent | ) | |
| of IP | ) | |
| Plaintiffs, | ) | **Claim of Jury Trial** |
| | ) | |
| -v- | ) | |
| | ) | |
| CITY OF PROVIDENCE, | ) | |
| by and through its acting treasurer, | ) | |
| Lance Cardillo, | ) | |
| STEVEN PARE, in his individual and | ) | |
| official capacity, HUGH T. CLEMENTS, | ) | |
| in his individual and official capacity, | ) | |
| JAMES BARROS, in his individual and | ) | |
| official Capacity, SEAN COMELLA, | ) | |
| in his individual and official capacity, | ) | |
| DEFENSE TECHNOLOGY, LLC., | ) | |
| ABC COMPANY, Alias, | ) | |
| Officers JOHN & JANE DOE, Alias 1-10, | ) | |
| in their individual and official capacities | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

## INTRODUCTION

1.      This is a civil rights action for use of excessive, unnecessary, and unreasonable force

which occurred on June 2, 2020, in Downtown Providence when Providence Police Officer Sean

Comella, under color of law, without cause or justification, fired a less lethal projectile ("KIP") at Plaintiffs Eduardo Santos and Lydia Camacho as they sat in their vehicle at a red light as they were passing through Kennedy Plaza during a public protest of police brutality and racism stemming from George Floyd's murder by a Minneapolis police officer on May 25, 2020.

2.      As a direct result of the less-lethal gunshot wound to the head, Eduardo Santos nearly died, suffered a bifrontal subarachnoid hemorrhage, lost his left eye, suffered extensive facial and skull fractures, and was otherwise seriously and permanently injured.

## PARTIES

3.      Plaintiff Eduardo Santos, (hereinafter referred to as "Plaintiff Santos"), is an individual and resident of the City of Providence, County of Providence, State of Rhode Island.

4.      Plaintiff Lydia Camacho, (hereinafter referred to as "Plaintiff Camacho"), is an individual and resident of the City of Providence, County of Providence, State of Rhode Island.

5.      Plaintiffs Eduardo Santos and Lyndia Camacho also file this action on behalf of their minor child ES, as parents and natural guardians of ES.

6.      Plaintiffs Lyndia Camacho also files this action on behalf of her minor child IP, as parent and natural guardian of IP.

7.      Plaintiffs Eduardo Santos also files this action on behalf of his minor child JS, as parent and natural guardian of JS.

8.      Defendant City of Providence (hereinafter referred to as "Defendant City") is a duly organized city in the State of Rhode Island, and its acting treasurer is Lance Cardillo.

9.      Defendant Steven Pare (hereinafter referred to as "Defendant Pare") was, at all relevant times, the duly appointed commissioner of public safety of the City of Providence, head of the department of public safety, and the head of the police department of the City of Providence. His

2

alleged actions were taken under the color of the laws of the State of Rhode Island and the City of Providence. He is sued in his individual and official capacity. Defendant Hugh T. Clements (hereinafter referred to as "Defendant Clements") was, at all relevant times, the duly appointed Chief of Police for the City of Providence. His alleged actions were taken under the color of the laws of the State of Rhode Island and the City of Providence. He is sued in his individual and official capacity.

10.     Defendant James Barros (hereinafter referred to as "Defendant Barros") was, at all relevant times, a Lieutenant, and the duly appointed supervisor of the Special Response Unit for the City of Providence and directly in charge of the team that included Defendant Sean Comella. His alleged actions were taken under the color of the laws of the State of Rhode Island and the City of Providence. He is sued in his individual and official capacity.

11.     Defendant Sean Comella (hereinafter referred to as "Defendant Comella") was, at all relevant times, a duly appointed police officer of the Providence Police Department holding the rank of sergeant. His actions alleged in this complaint were taken under the color of the laws of the State of Rhode Island and the City of Providence. He is sued in his individual and official capacity.

12.     Defendant Defense Technology LLC (hereinafter referred to as "Defendant Defense Tech"), upon information and belief, was, at all relevant times, the manufacturer of the Deftec Model #1425 40mm munitions launcher, and the Less Lethal Munition (Hereinafter referred to as "KIPs") manufacturer of the Direct Impact 40mm Marking Crushable Foam Round, Direct Impact LE 40mm Extended Range OC Crushable Foam Round, and Stinger 40mm 60-Calibert Rubber Balls Round, the ammunition(s) specifically authorized for use by the Providence Police Department, and is a duly organized entity formed under the laws of the State of Delaware.

3

13.     Defendants ABC Company, Alias 1-10, upon information and belief were, at all relevant times, engaged in the manufacturing, distribution, marketing, and/or selling of the less lethal munitions and less lethal munitions launcher. Defendant ABC Company, Alias's 1-10 identities are not currently known, but they are sued herein and a motion to amend will be brought upon identification to substitute those companies for the fictitious names.

14.     Defendants John and Jane Does, Alias 1-10, upon information and belief were, at all relevant times, sworn officers of the Providence Police Department and residents of Providence, and citizens of the State of Rhode Island. They are sued, herein, in their individual and official capacities. Defendants John and Jane Does, Alias's 1-10 identities are not currently known, but they are sued herein and a motion to amend will be brought upon identification to substitute those persons for the fictitious names.

## JURISDICTION

15.     The Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, and 1343(a)(3)(4).

16.     The plaintiff's claims are authorized by 42 U.S.C. § 1983.

17.     Venue in this District is proper under 28 U.S.C. § 1391(b)(2), as the events, omissions, and actions giving rise to the plaintiff's claims occurred in the District of Rhode Island.

18.     This Court has supplemental jurisdiction over the Plaintiff's state law claims against the City of Providence and its employees as they arise of the same nexus of fact as his constitutional claims under 28 U.S.C. § 1367 and against Defendant Defense Technology under 28 U.S.C. § 1332 as diversity of citizenship exist.

## FACTS

19.     After George Floyd was murdered on May 25, 2020, Minneapolis police officers arrested Plaintiff Floyd, a 46-year-old Black man, after a convenience store employee called 911 and told

the police that Plaintiff Floyd had bought cigarettes with a counterfeit twenty-dollar bill. Those officers pinned Plaintiff Floyd to the ground. Then one officer, Derek Chauvin, put his knee on Plaintiff Floyd's neck. He would choke Plaintiff Floyd for eight minutes and forty-six seconds while Plaintiff Floyd repeatedly told him that he couldn't breathe; while numerous other officers callously looked on and did absolutely nothing; while bystanders pleaded for Officer Chauvin to stop killing Plaintiff Floyd; while Officer Chauvin mocked Plaintiff Floyd. Among Plaintiff Floyd's final words were "please, please, please, I can't breathe." He would die in the street under the knee of the oppressor.

20.     Plaintiff Floyd's death was emblematic of the diseased, racist system of policing in the United States of America. Officers know that they can violate the law, and constitution, with impunity, and particularly when the victim of their abuse is a person of color. Fellow officers will do nothing more than stand by and watch. And, when someone complains, the police department, police union, and local prosecutors and politicians will circle the wagons in defense of a murderer, simply because he wears a badge and a gun.

21.     Plaintiff Floyd's murder, and this system, sparked millions of people to gather across this nation, and world, to mourn and call for the abolition of modern policing. Providence was among the cities where there was a strong reaction to Plaintiff Floyd's death with thousands taking to the streets in protest.

22.     Undeterred by the fact that police officers' use of excessive force was the very subject of these demonstrations, the Providence Police Department ("Providence Police" or "PPD") officers repeatedly used force against these crowds, targeting peaceful, non-threatening protesters and bystanders with 40mm Launchers, tear gas, smoke bombs, flash-bangs, Pepper Balls, mace, and what are known as "kinetic impact projectiles," or "KIPs."

23.    Kinetic impact projectiles, which include so-called "rubber bullets" or "sponge bullets," are marketed to and used by American police forces for the purpose of controlling crowds. The manufacturers, distributors, and sellers of these projectiles—and the police departments that use them against their own citizens—market and promote the 40mm Launcher and its ammunition as being "nonlethal" or "less lethal." They are not. In fact, these KIPs kill approximately three percent of all people they strike when less than 17% of people hit by gun fire die of gunshot wounds even when they have been hit with multiple rounds. But a 3% kill rate of a weapon and ammunition advertised as "non" or "less" lethal than an ordinary firearm does not sell. So, to sell these 40mm Launchers and their ammunition, the Defendant Defense Tech actively disregards the unreasonable risks the 40mm Launcher and its ammunition poses on innocent citizens.

24.    On May 30, 2020, and June 1, 2020, thousands of people gathered in Providence, at various locations in response to peaceful rallies organized by Black Lives Matter and others.

25.    Defendant City had intelligence about protests and a potential event but admits that it did not have enough police officers on duty in the evening hours of June 1, 2020, into June 2, 2020, to keep the peace and to protect life and property.

26.    Late on June 1, 2020, Defendant Pare, the public safety commissioner, was assessing the situation when a brick smashed through his cruiser's rear window thereby inflaming police response.

27.    In the early morning hours of June 2, 2020, people entered the Providence Place Mall, damaged property, and looted and a police cruiser was also heavily damaged then set on fire which further inflamed the response of the police.

28.    In the early morning hours of June 2, 2020, Plaintiff Santos was operating a motor vehicle near City Hall heading south on Dorrance Street at Kennedy Plaza in the City of

6

Providence, Rhode Island with his wife, Plaintiff Lydia Camacho in the passenger seat.

29.    At that time and location, Plaintiff Camacho was videotaping and live streaming the events in Kennedy Plaza and saw and streamed a group of police officers chasing a young black male through Kennedy Plaza, take him to the ground, and violently beat him.

30.    Posing no threat to said officers, and from within the vehicle, approximately 20-25 yards away, Plaintiff Santos, who had also seen the events, shouted for the police officers to stop the excessive beating of the young black male whom the police officers had seized.

31.    One of the officers that chased and seized the young black male was Defendant Comella who had a Providence Police Department issued less-lethal device in his possession which had the capability to fire KIPs.

32.    Upon information and belief, the KIPs consisted of a plastic body and a crushable foam nose which contained a powder payload.

33.    Upon information and belief, the KIPs were designed to incapacitate aggressive and/or non- compliant subjects.

34.    Upon information and belief, the rounds utilize smokeless powder as the propellant and have velocities that are extremely consistent.

35.    Police departments across the country have discontinued or lessened the use of less-lethal weapons since the occurrence of several highly publicized and criticized incidents which left citizens dead or permanently injured.

36.    At or about 2:50 am, as Plaintiff Camacho's video of the police chasing a person through Kennedy Plaza was streaming, Defendant Comella, without giving any prior warning to Plaintiffs:

    a.    Turned towards the Plaintiffs,

     b.      Raised a less-lethal device in Plaintiffs' direction,

     c.      Aimed the less-lethal device in Plaintiffs' direction, and

     d.      Pulled the trigger and fired an KIP in Plaintiffs' direction.

37.     The KIP fired by Defendant Comella impacted Plaintiff Santos's eye, face, and/or head

38.     Plaintiff Santos's eye and face erupted as a direct result of the KIP which caused blood spatter and body matter from Plaintiff Santos to make contact with Plaintiff Camacho and the interior compartment of the vehicle.

39.     No member of the Providence Police Department, to include Defendant Comella, rendered first aid to Plaintiff Santos or attempted to follow up on the use of force against Plaintiffs.

40.     Defendant Comella did not immediately report the use of force as required by Providence Police Department policy at the time of the event which would have allowed the area to be cordoned off, witnesses to be interviewed, evidence preserved, and help provided to Plaintiffs.

41.     Defendant Comella did not report the use of force to his Supervisor or any member of the Providence Police Department until hours later after Rhode Island Hospital, where the Plaintiff was treated, contacted the Providence Police Department to tell them of a gunshot injury.

42.     As the KIP was fired, Plaintiff Camacho dropped her phone so she could catch Plaintiff Santos' body as it slumped towards her immediately after impact of the KIP and thereafter rendered aid to Plaintiff Santos by holding his dislodged eyeball and stopping the blood pouring from his vacant eye socket in hopes of increasing his chances of surviving the injuries caused by Defendants.

43.     Plaintiff Camacho took control of the vehicle and rushed Plaintiff Santos to the Emergency Department at Rhode Island Hospital.

44.     Rhode Island Hospital thereafter reported for the first time to any member of the Providence Police Department that they were treating a gunshot wound victim, Plaintiff Santos.

45.     Neither Plaintiff Santos nor Plaintiff Camacho committed a crime during the relevant events, nor were they charged with any crimes, and both were peaceful at the time of the incident.

46.     The Plaintiffs were in Providence on June 2, 2020, as innocent bystanders.

47.     As a direct result of the KIP's impact, Plaintiff Santos suffered injuries to include:

     a.     Traumatic subarachnoid hemorrhage,

     b.     Extensive facial/cranial fractures,

     c.     Respiratory failure,

     d.     Ruptured globe of left eye with uveal prolapse,

     e.     Seizures,

     f.     Loss of smell, and disfigurement

     g.     Other cognitive disorders

48.     As a direct result of the trauma of being shot with the KIP, Plaintiff Santos required several surgeries and was admitted to the hospital for 10 days for inpatient care with most of that time in the ICU unit.

49.     As a direct result of the trauma of being shot with the KIP, Plaintiff Santos will require lifelong future medical care.

50.     As a direct result of the trauma of being shot with the KIP, Plaintiff Santos required numerous surgical procedures and ultimately lost his left eye.

51.     As a direct result of the trauma of being shot with the KIP, Plaintiff Santos lost the ability to transact business and perform many activities of daily living, lost enjoyment of life and

9

family, suffered both past and future lost wages, incurred and will continue to incur significant charges for necessary medical care and hospitalization and has suffered and will continue to suffer great pain of body and mind for the remainder of his life.

52.    As a direct result of Plaintiff Santo's being shot with the KIP, Plaintiff Camacho was hit with blood spatter and body tissue from Plaintiff Santos and suffered severe mental and emotional distress.

53.    As a direct result of Plaintiff Santo's being shot with the KIP, and being hit with blood spatter and body tissue, Plaintiff Camacho has lost enjoyment of life and family, lost wages, incurred and will continue to incur significant charges for necessary medical and psychiatric care and will continue to suffer great pain of mind for the remainder of her life.

54.    Plaintiff Santos and Plaintiff Camacho have been together for more than 13 years and are married under the common law of Rhode Island and due to the events set forth above, both have suffered from a loss of consortium as their ability to act as partners has been diminished and ability to provide mental and emotional support and connection with the other impacted.

55.    Defendants Pare and Clements were the policymakers for the Providence Police Department and created, instituted, maintained, and were responsible for enforcing policies and procedures relating to arrests, seizures, the safe employment of force, and enforcing the requirement that police officers not retaliate against citizens for the exercise of their rights under the United States Constitution and the Constitution for the State of Rhode Island.

56.    Defendant Barros was the supervising officer for the Special Response Unit, of with Defendant Comella was a member on June 2, 2020.

57.    Neither Defendants Pare, Clements or Barros took steps to ensure that the Providence Police Department and/or its special response unit would have an appropriate plan to deal with

anticipated demonstrations due to the murder of George Floyd.

58.    Defendants Pare, Clement, and Barros abjectly failed to supervise the officers on the ground during the protests.

59.    Throughout the protests, Defendants Pare, Clement and Barros failed to provide any meaningful supervision of the officers under their control.

60.    Defendants Pare, Clement and James Barros failed to require that officers document in any way what days, times, and locations they were working at throughout the protests. The complete and utter lack of a police roster is a basic aspect of supervision that Defendants failed to engage in.

61.    Defendants Pare, Clement, and Barros failed to require that officers author use of force reports relating to each use of force during the entirety of the George Floyd protests. The only use of force report pertaining to this event was authored hours after the protest. The complete and utter lack of a requirement that officers author use of force reports, which would then be reviewed by supervisors like Defendants Pare, Clement and Barros at the time of the events, is a basic aspect of supervision that Defendants failed to engage in.

62.    Defendants Pare, Clement, and Barros failed to require that officers author reports relating to the use of KIP during the entirety of the George Floyd protests. The only report outlining what KIP were used during the protest was authored hours after the attack on Plaintiff Santos and not at the time of the event as required by policy. The complete and utter lack of a requirement that officers author use of force reports at the time of the events is a basic aspect of supervision that Defendants failed to engage in.

63.    Defendants Pare, Clement and Barros failed to track the munitions that were used by officers during the entirety of the George Floyd protests as is evidenced by Sergeant Comella's

statement that he does not know with certainty what he shot at the Plaintiff Santos with. The complete and utter lack of tracking the munitions used during the protests is a basic aspect of supervision that Defendants failed to engage in.

64.     Defendants Pare, Clement, and Barros failed to require that officers wear or turn on their body-worn cameras during the entirety of the George Floyd protests. The complete and utter lack of a requirement that officers wear and utilize their body-worn cameras is a basic aspect of supervision that Defendants failed to engage in.

65.     Defendants Pare, and Clement have only disciplined a few individuals for their actions during the George Floyd protests, despite rampant evidence that officers used grossly excessive force, failed to provide dispersal warnings and orders before using force, arrested individuals simply because they were protesting, failed to activate their body-worn cameras, and failed to document their uses of force throughout the protests. This complete lack of any discipline imposed continuously indicated to officers that their actions were consistent with PPD custom, policy, and practice, and ensured that officers, like the Defendants who shot Plaintiff Santos, could use force against protesters without consequence.

66.     Defendants Pare, Clements and Barros failed to ensure that members of the Providence Police Department, including Defendant Comella were properly trained, evaluated, and supervised to deal with the demonstrations that occurred on June 1 and June 2, 2020, which resulted in the following:

        a.      Improper use of force through the use of the KIP against Plaintiff Santos when said use was not warranted both because of his peaceful actions, because there was no threat to any Police officer by Plaintiff Santo's actions, and because of the area targeted by Defendant Comella to be hit with the KIP;

b.    Failure to control the crowd of protesters,

c.    Failure to properly document and inspect following the use of the KIP by an officer against Plaintiff Santos, and

d.    Otherwise implement and enforce policies necessary to prevent the occurrence of violations of the plaintiff's civil rights.

67.    These failures were the result of Defendant City, Pare, Clement, Barros, and Comella's deliberate indifference to the violation of the plaintiffs' civil rights.

68.    PPD officers used a number of KIPs against peaceful protesters, including Plaintiffs during the protests.

69.    The use of KIPs by the PPD officers on June 2, 2022, was specifically authorized by Defendants Pare, Clement, and Barros against protestors and, upon information and belief, authorized to be used without warning.

70.    KIPs have a larger surface area than other ammunition, and thus they take unpredictable flight paths and reduced accuracy is inevitable.[1]

71.    It is extremely common for KIPs to cause contusions, abrasions, and hematomas.[2] Additionally, blunt impact may cause internal injuries.[3]

72.    Fatalities may occur when impact is at the head, neck, or precordium (the region of the chest immediately in front of the heart).[4]

73.    According to a systematic review of available literature, three percent of those injured by

---

[1] Rohini Haar et al., Death, injury, and disability from kinetic impact projectiles in crowd control settings: a systematic review, 2017 BMJ Open 2, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5736036/pdf/bmjopen-2017-018154.pdf.; Kinetic Impact Projectiles, Physicians for Human Rights, https://phr.org/wp-content/uploads/2020/06/PHR_INCLO_Fact_Sheet_Kinetic_Impact_Projectiles.pdf.
[2] W. Bozeman & J. Winslow, Medical Aspects of Less Lethal Weapons, The Internet Journal of Rescue and Disaster Medicine, https://print.ispub.com/api/0/ispub-article/7142.
[3] Id.
[4] Id.

KIPs died from their injuries.[5]They permanently injured Fifteen percent of 1,984 people studied.[6]

74.    PPD uses 40mm launchers to shoot projectiles. 40mm launchers are firearms that shoot 40 mm specialty impact munitions at a speed of 90 to 100 miles per hour.

75.    PPD officers used 40mm launchers to launch foam bullets, sometimes referred to as rubber bullets, at protesters. Foam bullets are solid, spherical, cylindrical projectiles typically used to incapacitate a person and are known to leave bruising and welts.

76.    A 40mm round shot at the head, whether a beanbag, foam bullet, baton round, or tear gas canister, is deadly force.

77.    Since the protests began on May 28, 2020, at least 60 protesters nationwide sustained serious injuries from the use of "less-lethal" weapons by law enforcement, including "a broken jaw, traumatic brain injuries, and blindness."[7]

78.    PPD officers' use of these KIPs against peaceful protesters was approved, condoned, and ratified by Defendants City, Pare, Clements, and Barros.

79.    PPD officers were given specific authorization to use these KIPs, on peaceful protesters by Defendants Pare, Clements and Barros.

80.    PPD officers were not specifically trained to avoid the use of KIPs where only the head of an individual was shown, thus greatly increasing the risk of injury from and KIP.

81.    PPD officers were not specifically trained in the use of KIPs in the predictable protest and public safety scenario the PPD was faced with on the night of June 2, 2020, following the

---

[5] Rohini Haar et al., Death, injury, and disability from kinetic impact projectiles in crowd control settings: a systematic review, 2017 BMJ Open 2, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5736036/pdf/bmjopen-2017-018154.pdf.
[6] Id.
[7] Chemical Irritants, Physicians for Human Rights, https://phr.org/wp-content/uploads/2020/06/PHR_INCLO_Fact_Sheets_Chemical_Irritants.pdf.

murder of George Floyd.

82.    PPD officers used indiscriminate and excessive force against protesters gathered at the City Hall/Kennedy Plaza area on June 2, 2020, when Defendant Camella indiscriminately shot at Plaintiffs, who were peaceful protesters, about sixty feet away in a vehicle which was lawfully on a roadway.

83.    The public and the Providence Police Department as a whole knew that people tend to gather, protest, and celebrate in the area around City Hall and Kennedy Plaza as it is the major hub of transportation within the city.

84.    Defendant City had plans to handle protests in these areas long before June 2, 2020 – but did not implement these plans on June 2, 2020.

85.    In addition to being understaffed, inadequately trained, and inadequately resourced, the call went out for mutual aid from surrounding departments; and mutual aid came to the city, but the added resources were not properly integrated into the command-and-control structure that night.

86.    Defendant City had a policy or custom of indifference to proper staffing, training, and equipping its officers in the matters set forth above.

87.    Defendant City has a policy or custom of indifference to misconduct by Providence Police Officers by failing to properly investigate complaints of misconduct and to discipline officers who used unreasonable or excessive force.

88.    Defendant City also had a policy or custom of tolerating a "code of silence" in which Providence police officers understood that they were not to report misconduct by fellow police officers.

89.    Because of this "code of silence" police officers in Providence felt free to use

unreasonable and excessive force on people because they expected fellow officers would not report any misconduct and they knew that the police department would accept the word of a police officer over the word of a civilian.

90.     Plaintiffs also seeks monetary relief for injuries Plaintiffs sustained as a result of the acts and omissions of Defendant Defense Tech as set forth below for negligence and strict liability for failure to warn and defective marketing.

<u>NOTICE OF CLAIM</u>

91.     Prior to institution of the within action against the City of Providence, plaintiffs complied with R.I.G.L. § 45-15-5 and more than forty (40) days have elapsed since plaintiff made presentment of his claim to the City of Providence without receiving just and due compensation for the said city.

<u>COUNT I</u>
<u>42 U.S.C. § 1983 – FIRST AMENDMENT VIOLATIONS</u>
(Plaintiff's Santos and Camacho v. Defendant against City of Providence, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella.)

<u>COUNT II</u>
<u>ARTICLE 1, SECTION 21 OF RHODE ISLAND CONSTITUTION.</u>
(Plaintiff's Santos and Camacho v. Defendant against City of Providence, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella.)

92.     Plaintiffs repeat and reallege each allegation contained in the preceding paragraphs as if incorporated and reiterated herein.

93.     Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella, acted under color of state law, and within the course and scope of their employment, in their capacities as officers of the PPD at all times relevant to the allegations in this Complaint.

94.     Defendants City of Providence, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella are "persons" under 42 U.S.C. § 1983.

16

95.    Plaintiffs were engaged in First Amendment and Article 1, Section 21 protected expression by gathering to protest police brutality.

96.    The actions of Defendants City of Providence, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella specifically, the use of excessive force against peaceful protesters – can be expected to chill a reasonable person from engaging in activity protected by the First Amendment and Article I, Section 21.

97.    Plaintiffs' expressions were on a matter of public concern and did not violate any law.

98.    Plaintiffs' expressions occurred at a traditional public forum.

99.    Defendants' Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella's actions were a content-based and/or viewpoint-based restriction of Plaintiff's expression.

100.    Defendants' Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella's actions were not a reasonable time, place, and manner restriction on speech.

101.    Defendants City of Providence, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

102.    At the time when Defendant Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella stopped Plaintiffs from speaking and gathering, Plaintiffs had a clearly established constitutional right under the First Amendment to the United States Constitution and Article 1, Section 21 of the State Constitution to gather, express himself, and speak freely. Any reasonable law enforcement officer knew or should have known of this clearly established right.

103.    Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and

in reckless disregard of Plaintiff's constitutional rights.

104.    Defendant Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella stopped Plaintiff from engaging in expressive activity in accordance with the customs, policies, and practices of Defendant City.

105.    Defendant City has a custom, practice, or policy of tolerating violations of the First Amendment of the United States Constitution and Article 1, Section 21 of the State Constitution.

106.    The actions of the Defendants Lieutenant Barros and Sergeant Comella were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant City.

107.    Defendant City's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella's violation of Plaintiff's constitutional rights.

108.    Defendants City failed to properly supervise and/or train its officers.

109.    As a direct and proximate cause and consequence of Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella's unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

110.    Defendants' City of Providence, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

111.    Defendants' City of Providence, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella's intentional actions or inactions as described herein intentionally

18

deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and the Constitution of the State of Rhode Island.

### COUNT III.
### 42 U.S.C. § 1983 – FIRST AMENDMENT VIOLATION – RETALIATION
(Plaintiff's Santos and Camacho v. Defendant against City of Providence, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella).

### COUNT IV.
### ARTICLE 1, SECTION 21 OF THE STATE CONSTITUTION – RETALIATION
(Plaintiff's Santos and Camacho v. Defendant against City of Providence, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella).

112.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

113.    Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the PPD at all times relevant to the allegations in this Complaint.

114.    Defendants City of Providence, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella are "persons" under 42 U.S.C. § 1983.

115.    Plaintiffs were engaged in First Amendment and Article 1, Section 21 protected expression by gathering to protest police brutality.

116.    The actions of Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella specifically, the use of excessive force against peaceful protesters – can be expected to chill a reasonable person from engaging in activity protected by the First Amendment.

117.    Plaintiffs' expression was on a matter of public concern and did not violate any law.

118.    Plaintiffs' expression occurred at a traditional public forum.

119.   Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella jointly and on their own accord responded to Plaintiffs' First Amendment and Article 1, Section 21 protected activity with retaliation, including but not limited to use of physical force, including KIPs and chemical agents.

120.   By unlawfully using force against Plaintiffs, Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella sought to punish Plaintiffs for exercising their First Amendment rights Article I, Section 21, to silence them, and to deter them from gathering and speaking in the future. Defendants' Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment and Article I, Section 21, protected activity.

121.   Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella's retaliatory actions were substantially motivated by Plaintiffs' exercise of their First Amendment and Article I, Section 21 rights.

122.   At the time when Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella retaliated against Plaintiffs for exercising their First Amendment and Article I, Section 21 rights, Plaintiffs had a clearly established constitutional right under the First Amendment to the United States Constitution and Article I, Section 21, to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

123.   Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella, collectively, failed to intervene to prevent each Defendant Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella from violating Plaintiffs' constitutional rights.

124.   Defendants Commissioner Pare, Chief Clements, Lieutenant Barros and Sergeant Comella engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

125.   Defendants Commissioner Pare, Chief Clements, Lieutenant Barros and Sergeant Comella stopped Plaintiffs from engaging in expressive activity in accordance with the customs, policies, and practices of Defendant City.

126.   Defendant City has a custom, practice, or policy of tolerating its officers' retaliatory violations of the First Amendment of the United States Constitution and Article I, Section 21.

127.   Defendant City failed to properly supervise and/or train its officers.

128.    The actions of Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant City.

129.   Defendant City's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiffs' constitutional rights.

130.   As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiffs suffered injuries, damages, and losses.

131.   Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiffs injuries and losses, including but not limited to disfigurement, non-economic damages, economic damages, the physical and mental pain, and anguish Plaintiffs suffered during and after the protest, and other compensatory and special damages.

132.   Defendants Commissioner Pare, Chief Clements, Lieutenant Barros and Sergeant Comella intentional actions or inactions as described herein intentionally deprived Plaintiffs of

due process and of rights, privileges, liberties, and immunities secured by the Constitution of the

United States of America and Article I, Section 21.

COUNT V.
42 U.S.C. § 1983
Fourth Amendment Violation — Excessive Force
(Plaintiffs against Defendants City, Commissioner Pare, Chief Clements, Lieutenant Barros, and
Sergeant Comella)

COUNT VI.
Violation of Article 1, Section 6 of Rhode Island Constitution
(Plaintiffs against Defendants City, Commissioner Pare, Chief Clements, Lieutenant Barros, and
Sergeant Comella)

133.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

134.    Defendants Commissioner Pare, Chief Clements, Lieutenant Barros and Sergeant Comella acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the PPD at all times relevant to the allegations in this Complaint.

135.    Defendants Commissioner Pare, Chief Clements, Lieutenant Barros and Sergeant Comella are "persons" under 42 U.S.C. § 1983.

136.    Plaintiffs had a protected Fourth Amendment interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

137.    Defendant Comella did not have, at any time, a legally valid basis to seize Plaintiffs.

138.    Defendant Comella unlawfully seized Plaintiffs by means of excessive physical force, including the use of KIPs against Plaintiffs.

139.    Defendants had no warrant authorizing any seizure of Plaintiffs.

140.    Each Defendant, namely Defendants Commissioner Pare, Chief Clements, and Lieutenant Barros failed to intervene to prevent the other Defendants Commissioner Pare, Chief

Clements, Lieutenant Barros, and Sergeant Comella from violating Plaintiffs constitutional rights, and are thereby liable for such failure to intervene.

141.   Defendants' Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella's actions were objectively unreasonable in light of the circumstances confronting them.

142.   Plaintiffs had committed no crime (nor could any of the Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, or Sergeant Comella have reasonably believed they had committed any crime) that would legally justify arrest or detention, Plaintiffs gave the officers no reason to fear for their safety, Plaintiffs were in a car, unable to cause harm to an officer approximately sixty feet away, obviously unarmed, and not resisting arrest or fleeing when they were stopped at a red light.

143.   Defendant Comella did not have a legally valid basis to seize Plaintiffs in the manner and with the level of force used under the circumstances presented.

144.   Defendants Commissioner Pare, Chief Clements, and Lieutenant Barros recklessly created the situation in which Defendant Comella used force.

145.   Defendants' Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.

146.   At the time when Defendant Comella used excessive force against Plaintiffs, Plaintiffs had a clearly established constitutional right under the Fourth Amendment to the United States Constitution and Article 1, Section 6 of Rhode Island Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

147.   Defendants Commissioner Pare, Chief Clements, Lieutenant Barros and Sergeant

23

Comella engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiffs' constitutionally protected rights.

148.    Defendant City has a custom, practice, or policy of tolerating violations of the Fourth Amendment of the United States Constitution and Article 1, Section 6 of Rhode Island Constitution.

149.    The actions of the Defendants Lieutenant Barros and Sergeant Comella were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant City and Defendants Pare and Clements.

150.    Defendant City's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella's violation of Plaintiffs' constitutional rights.

151.    Defendants City failed to properly supervise and/or train its officers.

152.    As a direct and proximate cause and consequence of Defendants' City, Commissioner Pare, Chief Clements, Lieutenant Barros and Sergeant Comella unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

153.    Defendants' City, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiffs' injuries and losses, including but not limited to disfigurement, non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

154.    Defendants' City, Commissioner Pare, Chief Clements, Lieutenant Barros and Sergeant Comella intentional actions or inactions as described herein intentionally deprived Plaintiffs of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the

United States of America and the Constitution of the State of Rhode Island.

COUNT VII. 42 U.S.C. § 1983
FOURTEENTH AMENDMENT VIOLATION — DUE PROCESS
(Plaintiffs against Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and
Sergeant Comella)

COUNT VIII.
VIOLATION OF ARTICLE 1, SECTION 6 OF RHODE ISLAND CONSTITUTION
(Plaintiffs against Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and
Sergeant Comella)

155.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

156.    Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the PPD at all times relevant to the allegations in this Complaint.

157.    Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella are "persons" under 42 U.S.C. § 1983.

158.    The orders issued by Defendants City, Commissioner Pare, Chief Clements, and Lieutenant Barros and the authority on which those orders were based, were vague and not clearly defined.

159.    The orders issued by Defendants, Commissioner Pare, Chief Clements, and Lieutenant Barros and the authority on which those orders were based, offered no clear and measurable standard by which Plaintiffs and others could act lawfully.

25

160.    Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella each lacked legal authority, through Providence municipal ordinance, state law, or otherwise, to order the dispersal of Plaintiffs and, thereby, there were no explicit standards to govern the order of dispersal or limits on law enforcement's authority to order dispersal.

161.    Defendants Commissioner Pare, Chief Clements, and Lieutenant Barros each failed to intervene to prevent each Defendant Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella from violating Plaintiffs' constitutional rights.

162.    The orders issued by each Defendant City, Commissioner Pare, Chief Clements, and Lieutenant Barros, and the authority on which those orders were based, failed to provide people of ordinary intelligence a reasonable opportunity to understand what conduct they prohibited, and authorized or encouraged arbitrary and discriminatory enforcement, or both.

163.    At the time when Defendant Comella violated Plaintiffs' due process rights, Plaintiffs had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to be afforded due process of law. Any reasonable law enforcement officer knew or should have known of this clearly established right.

164.    Defendants Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella each engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiffs' constitutionally protected rights.

165.    Defendant City has a custom, practice, or policy of tolerating violations of the Fourteenth Amendment of the United States Constitution.

166.    The actions of the Defendants Lieutenant Barros, and Sergeant Comella were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant

City to include Defendants Commissioner Pare, and Chief Clements.

167.    Defendant City customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' Comella's violation of Plaintiffs' constitutional rights.

168.    Defendant City failed to properly supervise and/or train its officers.

169.    Each Defendant Commissioner Pare, Chief Clements, Lieutenant Barros and Sergeant Comella own intentional actions or inactions as described herein intentionally deprived Plaintiffs of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

170.    Each Defendants' City, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella's herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiffs' injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain, and anguish Plaintiffs suffered during and after the protest, and other compensatory and special damages.

171.    Each Defendant, namely Defendants City, Commissioner Pare, Chief Clements, Lieutenant Barros, and Sergeant Comella's intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**COUNT IX**
**42 U.S.C. § 1983 -- SUPERVISOR LIABILITY**
(Plaintiff Santos and Plaintiff Camacho v. Defendant Pare and Defendant Barros both in their individual and official capacity)

172.    Plaintiffs repeat and reallege each allegation contained in the preceding paragraphs as if incorporate and reiterated herein.

173.    Defendant Pare was acting under color of law.

27

174.    Defendant Pare was the top supervisor of the Police Department and Defendant Lieutenant Barros was the supervisor in charge of Defendant Sergeant Comella.

175.    Both Defendant Pare and Defendant Barros directed the defendant officers in the acts that affirmatively link them to the deprivation of Plaintiff Santos and Plaintiff Camacho's particular federal rights under the First Amendment, Fourth, Fourteenth Amendments and particular state rights under the Rhode Island Constitution.

176.    Defendant Pare as the top supervisor, knew or should have known that the wrongful conduct created a substantial risk of harm to the public and to the Plaintiffs.

177.    Defendant Barros as the supervisor of Sergeant Comella, knew or should have known that the wrongful conduct created a substantial risk of harm to the public and to the Plaintiffs

178.    Defendant Pare, the top supervisor, disregarded the risk of substantial harm by expressly approving, impliedly approving, or failing to take adequate action to prevent the officers' wrongful conduct.

179.    Defendant Barros, disregarded the risk of substantial harm by expressly approving, impliedly approving, or failing to take adequate action to prevent the officers' wrongful conduct.

<u>COUNT X</u>
<u>42 U.S.C. § 1983 -- MUNICIPAL LIABILITY</u>
(Plaintiff Santos and Plaintiff Camacho v. Defendant City)

180.    Plaintiffs repeat and reallege each allegation contained in the preceding paragraphs as if incorporate and reiterated herein.

181.    Defendant City acted under the color of law.

182.    Defendant City deprived Plaintiffs of a federal right through the enforcement of a policy or custom of under resourcing the police department, failing to properly train the police officers, and a failure to properly discipline its officers.

183.   The Defendant City failed to adequately train the officers in diffusing large scale civil protests using less lethal munitions.

184.   The Defendant City disregarded the known or obvious consequence, that a particular training deficiency or omission, would cause the city's officers to violate the Plaintiffs' constitutional rights, and this deficiency or omission caused the officer to deprive the Plaintiffs of a constitutional right.

185.   The Providence Police Department does not have policies and procedures in place to govern the use of less lethal munitions during large scale civil protests.

186.   For years leading up to the incident, the Providence Police Department has displayed a pattern of unreasonable violence against its citizens.

187.   According to the director of the Providence External Review Authority (PERA), Defendant Pare has repeatedly conveyed "materially incomplete" information to the PERA and the general public.

188.   PERA conducted an independent review of a 2020 incident and found "details and facts about the incident that were deeply troubling and completely undisclosed by [commissioner's] office"

189.   Providence External Review Authority (PERA) was excluded as a full investigatory partner in a separate 2020 incident.

190.   A failure to discipline has created an environment in which officers feel as though they can violate Constitutionally protected rights without repercussions.

191.   The policy or custom was the moving force behind the deprivation of the Plaintiffs clearly established federal rights.

192.   Plaintiffs sustained injuries due to the Defendant City's failure to train its officers in the

use of less lethal munitions during large scale civil protests, the Defendant City's failure to train on controlling large scale civil protest, the Defendant City's failure to properly instruct its officers on the proper standard for use of force, and the Defendant City's failure to discipline its officers resulting in constitutional rights violations

COUNT XI NEGLIGENCE

(Plaintiff Santos and Plaintiff Camacho v. Defendant City, Defendant Pare, Defendant Clement, Defendant Barros and Defendant Comella)

193.    Plaintiffs repeat and reallege each allegation contained in the preceding paragraphs as if incorporate and reiterated herein.

194.    Defendants City, Pare, Clement, Barros and Comella owed a duty to Plaintiffs not to place them in danger.

195.    Defendants City, Pare, Clement, Barros and Comella owed a duty to Plaintiffs to exercise due care during their seizure of Plaintiff Santos.

196.    Defendants City, Pare, Clement, Barros and Comella breached that duty when Defendant Comella fired a non-lethal projectile into the vehicle occupied by the plaintiffs in violation of Providence Police Department guidelines.

197.    Defendant City, Defendant Pare and Defendant Clement owed a duty to the plaintiffs to implement policies and procedures that govern the use of less lethal munitions during civil unrest.

198.    Defendant City, Pare, Clement, and Barros's failure to implement and/or create said policies and procedures breaching a duty owed to the plaintiffs.

199.    Defendant City, Pare, Clement, and Barros's owed a duty to the plaintiffs to adequately train officers in the use of less lethal munitions during civil unrest.

200.    Defendant City, Pare, Clement, and Barros's failure to adequately train officers in the use

30

of less lethal munitions during civil unrest.

201.    Defendant City, Defendant Pare and Defendant Clement owed a duty to the plaintiffs to discipline officers to prevent conduct that violates the constitutional rights.

202.    Plaintiffs' injuries were caused by the negligence and breach of duty of the Defendants.

203.    As a direct and proximate result of the actions of Defendants City, Pare, Clement, Barros and Comella, the plaintiffs have sustained physical pain and suffering, and emotional distress. Moreover, Plaintiff Santos has incurred medical bills, lost wages, and will incur future medical bills, lost income and pain and suffering.

## COUNT XII
## STRICT PRODUCTS LIABILITY: MARKETING DEFECT/ FAILURE TO WARN
(Plaintiff Santos and Plaintiff Camacho v. Defendant Defense Technology LLC, and Defendant ABC Company, Alias)

204.    Plaintiffs repeats and realleges each allegation contained in the preceding paragraphs as if incorporated herein.

205.    This is a civil action for monetary relief for injuries Plaintiffs sustained as a result of the acts and omissions of Defendant Defense Tech and ABC Company. These Defendants engaged in false and negligent marketing of their product, and as the product manufacturers, are strictly liable for their failure to warn against the inherent risks associated with using these weapons and the ammunition to control crowds. Defendants also engaged in intentionally marketing its weapons to police departments, specifically the Providence Police Department, as less lethal and even touted literature calling them "Non-Lethal"[8]    all the while knowing that the 40mm

---

[8] https://www.defense-technology.com/wp-content/uploads/2020/03/Human-Effects-NL_IM.pdf

Launcher and the KIPs are dangerous weapons. The Defendant Defense Tech's website touts Defense Tech as being experts at de-escalation tools and techniques for thirty years. The Defendants further represented on its website that extensive testing was done on the 40mm Launcher and the eXact iMpact munitions to ensure that the rounds are less lethal when fired within the optimal energy range, i.e. causing sufficient impact energies to disorient or incapacitate and individual without causing serious physical harm.[9] None of these representations are accurate, and Defendants know it.

206.    Kinetic impact projectiles, which include so-called "rubber bullets" or "sponge bullets," are marketed to and for use by American police forces to control crowds. The manufacturers, distributors, and sellers of these projectiles—and the police departments that use them against their own citizens—market and promote these bullets as being "nonlethal" or "less lethal." They are not. In fact, the fatality, morbidity, and significant risks of injuries from KIPs have been well documented. Regardless, in cities across the country, including Providence, police departments use these weapons as advertised and marketed by Defendants—to quell participation in protest and control crowds by firing KIPs into crowds because these Defendants claim they are effective and safe, even though five decades of evidence shows such weapons can disable, disfigure, and even kill.[10]

207.    In particular, Providence Police used a type of KIPs called 40mm eXact iMpact "sponge"

---

[9]

https://www.defense-technology.com/wp-content/uploads/2020/03/specialy-impact-technical-report-exact-impact-1006.pdf

[10] Liz Szabo, Police using rubber bullets on protestors that can blind, maim or kill, CNN.COM (June 3, 2020 at 3:54 a.m.),
https://www.cnn.com/2020/06/03/health/rubber-bullet-effects-kaiser-partner/index.html;
Rohini J. Haar, Vincent Iacopino, Nikhil Ranadive, Madhavi Dandu, Sheri D. Weiser, Abstract: Death, Injury and Disability from Kinetic Impact Projectiles in Crowd-Control Settings: a Systematic Review (Dec. 5, 2017), https://bmjopen.bmj.com/content/7/12/e018154.

bullets—often referred to as "rubber bullets"—against protestors, bystanders, and journalists. These rubber bullets and the 40mm Launchers used to fire them are manufactured, sold, marketed, and distributed by Defendant.

208.   "Rubber bullets are bullets. Bullets can kill."[11] KIPs—often called "rubber," "sponge," or "foam" bullets—describe a category of ammunition used commonly in crowd-control settings, including Pepper Balls. Some KIPs are made of hardened foam or plastic, often containing a rigid or metal core. Others are "beanbag" type rounds, and others may be composed of rubber or wood.

209.   "Regardless of their composition, these projectiles are shot out of guns at speeds comparable to that of a typical bullet, and when they hit their target, they can maim, blind, or even kill."[12] Although police departments like Providence are sold KIPs specifically for use in crowd control and because they are advertised by the Defendants as "nonlethal" or "less lethal," research shows they cannot be used safely. At close range, they "can break bones. They can facture skulls. If they hit the face, they can cause permanent damage and disability."[13] And even at long distances, they "have unpredicted trajectories, they bounce, and they're quite indiscriminate."[14]

210.   An independent 2017 study rejects nearly all of the positive attributes Defendant gives

---

[11] Brian Resnick, Rubber bullets can seriously mess you up: The dangers of "nonlethal" police weapons—like rubber bullets, flash-bang grenades, and tear gas—explained, VOX.COM (June 4, 2020, 9:21 a.m.), https://www.vox.com/identities/2020/6/3/21279047/rubber-bullets-flash-bang-tear-gas-police-protests; Amanda Arnold, "Rubber Bullets" Are Not Rubber, THECUT.COM (June 5, 2020), https://twitter.com/mcgrudis/status/1268591923402436609/photo/1.
[12] Alyssa Fowers, Aaron Steckelberg, & Bonnie Berkowitz , A guide to the less-lethal weapons that law enforcement uses against protesters, WASHINGTONPOST.COM (June 5, 2020), https://www.washingtonpost.com/nation/2020/06/05/less-lethal-weapons-protests/?arc404=true.
[13] Id.
[14] Id.

these products. That study found that for nearly 30 years these projectiles have caused significant morbidity and mortality, much of it from penetrative injuries and head, neck and torso trauma.[15] Given their inherent inaccuracy and associated risk of severe injury, disability and death, the study concluded that KIPs are not appropriate weapons for use in crowd-control settings and urged the establishment of uniform, international guidelines on the use of such weapons to prevent injuries and deaths.

211.    The 2017 BMJ study confirms that KIPs frequently cause serious injury, disability, and death. In the twenty-six studies selected for analysis, researchers identified 1,984 people with injuries, fifty-three of whom died as a result of their injuries. Among those injured, fifteen percent of the injuries resulted in permanent disability and 3 percent resulted in death.[16] Injuries were to the eyes overwhelmingly (84.2 percent) resulted in blindness. Permanent disabilities and severe injuries often resulted from strikes to the head and neck (48% of deaths and 87% of permanent disabilities). These findings confirm that these "less lethal" weapons are actually not anything like they are advertised. The less-lethal device and/or KIP was unreasonably dangerous given its specific purpose and posed a threat of severe injury.[17]

212.    The 40mm Launcher and rubber bullets in question were defective in their marketing and unreasonably dangerous at the time they left the hands of Defendants. Based upon information and belief, the 40mm Launcher and rubber bullets are manufactured by Defendants and then

---

[15] Haar RJ, Iacopino V, Ranadive N, et al. Death, injury and disability from kinetic impact projectiles in crowd- control settings: a systematic review. BMJ OPEN (2017), available at Rohini Haar et al., Death, injury, and disability from kinetic impact projectiles in crowd control settings: a systematic review, 2017 BMJ Open 2, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5736036/pdf/bmjopen-2017-018154.pdf.; Kinetic Impact Projectiles, Physicians for Human Rights, https://phr.org/wp-content/uploads/2020/06/PHR_INCLO_Fact_Sheet_Kinetic_Impact_Projectiles.pdf. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5736036/.
[16] See Resnick, supra, note 15.
[17] Id.

distributed, marketed and sold by these same Defendants. Defendants intended, expected and could reasonably foresee that the 40mm Launcher and rubber bullets would be used by the City of Providence and its police department as a method of crowd control on persons such as the Plaintiffs. At the time the 40mm Launcher and rubber bullets were sold or otherwise placed in the stream of commerce by Defendant, the risk of injury to Plaintiffs, particularly when the products were used as Defendant advertised, marketed, and promoted their use, was foreseeable.

213.    The 40mm Launcher and rubber bullets were being used for the very purpose for which they were intended and/or in a reasonably foreseeable manner at the time of the incidents in question. Because of the absence of essential safety warnings for the use of the 40mm Launcher and rubber bullets, an unreasonably dangerous condition was created which subjects all Defendants to strict liability in tort. Such an unreasonably dangerous condition was a producing cause of the injuries and damages sustained by Plaintiffs.

214.    At the time the 40mm Launcher and rubber bullets were sold or placed into the stream of commerce, it was feasible and practicable for Defendants to market the 40mm Launcher and rubber bullets so that it was safe for users. Defendants simply failed to do so, going so far as to market the products for a use which was not safe.

215.    Based upon information and belief, at all times material hereto, Defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the 40mm Launcher and rubber bullets, which as marketed are defective and unreasonably dangerous to the public, including these Plaintiffs.

216.    At all times material hereto, the 40mm Launcher and rubber bullets were designed, tested, inspected, manufactured, assembled, developed, labeled, licensed, marketed, advertised,

promoted, sold, packaged, supplied and/or distributed by Defendant ABC and Defendant Defense Tech in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

    a. The 40mm Launcher and rubber bullets were insufficiently tested and/or marketed for an intended use for which Defendants ABC and Defendant Defense Tech knew, or reasonably should have known, were not safe and, in fact, were unreasonably dangerous;

    b. In light of the potential and actual risk of harm associated with the use of the 40mm Launcher and rubber bullets for crowd control, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the bullets should not have been marketed for such use; and

    c. By failing to give adequate warnings of the dangers associated with the use of the 40mm Launcher and rubber bullets for the Defendants ABC and Defendant Defense Tech's intended purpose, dangers that were known or by the application of reasonably developed human skill and foresight should have been known, rendered the 40mm Launcher and rubber bullets unreasonably dangerous as marketed.

217.    At all times the 40mm Launcher and rubber bullets were designed, tested, inspected, manufactured, assembled, developed, labeled, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the 40mm Launcher and rubber bullets, like the City of Providence and its police department, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

218.    The less-lethal device's unreasonable danger and/or KIP's unreasonable danger is apparent in the severe extent of Plaintiff Santos' injuries.

219.    Plaintiffs suffered injuries caused by the defective nature of the less-lethal device and/or KIP designed, manufactured, and sold by Defendant Defense Technology LLC, and ABC Company, Alias.

220.    The level of danger presented by the devices was not obvious.

221.    There exists a reasonable alternative design and marketing which achieves the device's purpose in a safer way.

222.    Defendants Defense Technology, LLC and ABC Company, Alias are strictly liable.

COUNT XIII
NEGLIGENCE AND FALSE MARKETING

(Plaintiff Santos and Plaintiff Camacho v. Defendant Defense Technology LLC, and ABC Company, Alias)

223.    Plaintiffs repeats and realleges each allegation contained in the preceding paragraphs as if incorporated herein.

224.    Plaintiff Santos and Camacho suffered injuries caused by the less-lethal device and/or KIP designed, manufactured, and sold by Defendants, Defense Technology LLC, and ABC Company, Alias.

225.    Additionally, or in the alternative, Defendants ABC and Defendant Defense Tech  were negligent and grossly negligent in the marketing of the 40mm Launcher and rubber bullets. Defendants ABC and Defendant Defense Tech  breached the duty of care they owed to the public, such as Plaintiffs. Defendant ABC and Defendant Defense Tech's actions and inactions in regard to the 40mm Launcher and rubber bullets constitute negligence. Such negligence was the proximate cause of the Plaintiffs' damages and injuries.

226.    Further, Defendants ABC and Defendant Defense Tech  were aware of and knew of the

dangers associated with the use of the 40mm Launcher and rubber bullets without proper instructions on their use and warnings regarding the risks of such use. These dangers were known by Defendants ABC and Defendant Defense Tech before the accident in question, or before or at the time the 40mm Launcher and rubber bullets were used on the Plaintiffs, and therefore the risk of injury was known or should have been known by Defendants ABC and Defendant Defense Tech.

227.    Additionally, Plaintiffs would further show that the occurrence described above and the resulting injuries to Plaintiffs was proximately caused by the negligence and/or gross negligence of Defendants ABC and Defendant Defense Tech, their agents, servants and/or employees, in one or more of the following non-exclusive particulars:

        a.      failing to warn of the risk associated with the use of the 40mm Launcher and rubber bullets for crowd control;

        b.      failing to take reasonable precautions, including warnings, instructions, and training of users of the 40mm Launcher and rubber bullets, for Plaintiffs' safety;

        c.      failing to do what a reasonable and prudent manufacturer of the 40mm Launcher and rubber bullets would have done under the same or similar circumstances.

228.  Such negligence was a proximate cause of the injuries to the Plaintiffs.

<u>COUNT XIV ASSAULT</u>
(Plaintiff Santos and Plaintiff Camacho v. Defendant Comella in his individual and official capacity)

229.    Plaintiffs repeat and reallege each allegation contained in the preceding paragraphs as if incorporated and reiterated herein.

230.    Defendant Comella, without need or justification, acted with intent to cause the Plaintiffs to apprehend imminent harmful or offensive contact from Defendant Comella.

231.    Defendant Comella placed Plaintiffs in apprehension of a harmful contact by pointing his service weapon at them.

232.    Plaintiffs' apprehension -- fear of imminent bodily harm -- was reasonable.

233.    Defendant Comella's action of raising the less lethal weapon in Plaintiffs' direction indicates the ability to carry out the threat.

234.    The defendants' negligent, reckless, and egregious conduct indicates a flagrant disregard for the plaintiffs' safety.

## COUNT XV BATTERY
(Plaintiff Santos v. Defendant Comella in his individual and official capacity)

235.    Plaintiff Santos repeats and realleges each allegation contained in the preceding paragraphs as if incorporated and reiterated herein.

236.    Defendant Comella committed an unpermitted touching of Plaintiff Santos.

237.    Defendant Comella intended to cause contact with Plaintiff Santos.

238.    Defendant Comella's contact was harmful or offensive.

239.    Defendant Comella directly caused harmful or offensive contact to Plaintiff Santos.

240.     As a direct result of the harmful or offensive contact caused by Defendant Comella, Plaintiff Santos suffered serious and permanent injury.

## COUNT XVI MAYHEM
(Plaintiff Santos v. Defendant Comella in his individual and official capacity)

241.    Plaintiff Santos repeats and realleges each allegation contained in the preceding paragraphs as if incorporated and reiterated herein.

242.    As set forth above, Plaintiff Santos's was subjected to a Battery by the Defendant Comella.

243.    Part of Plaintiff Santos's skull came out of his head due to the battery caused by

Defendant Comella.

244.    Part of Plaintiff Santos's eye came out of his head due to the battery caused by Defendant Comella.

245.    Plaintiff Santos completely lost his left eye due to the battery committed by Defendant Comella resulting in permanent disfigurement, permanent loss of use, and permanent disability.

**COUNT XVII**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
(Plaintiff Camacho v. Defendant Comella in his individual and official capacity)

246.    Plaintiff Camacho repeats and realleges each allegation contained in the preceding paragraphs as if incorporated and reiterated herein.

247.    Defendant Comella owed a duty to Plaintiff to use reasonable care.

248.    Defendant Comella negligently breached that duty.

249.    The Plaintiff Camacho was present and saw the Plaintiff Santos injured.

250.    The Plaintiff Camacho is the wife of the Plaintiff Santos, Plaintiff Camacho suffered severe emotional distress as a result of witnessing the injury to Plaintiff Santos which included injury from being splattered with Santo's blood and bodily tissue.

251.    The injury to Plaintiff Santos resulted from the negligence of Defendant.

**COUNT XVIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
(Plaintiff Camacho v. Defendant Comella in his individual and official capacity)

252.    Plaintiff Camacho repeats and realleges each allegation contained in the preceding paragraphs as if incorporated and reiterated herein.

253.    Defendant Comella acted intentionally and recklessly when he shot at Plaintiff Santos as set forth herein.

254.    Defendant Comella's conduct was extreme and outrageous given the knowledge that

40

Santos was not engaged in any crime, Santos was approximately sixty feet from Defendant Comella, seated in a car, and no threat to Defendant Comella.

255.    Plaintiff Camacho suffered severe emotional distress because of witnessing the injury to Plaintiff Santos and being splattered with Santos's blood and body parts, which severely effected both her physical and mental condition.

256.    The injury to Plaintiff Santos resulted from the intentional and reckless actions of the Defendant.

**COUNT XIX**
**LOSS OF CONSORTIUM**
(Plaintiff Camacho v. All Defendants)

257.    Plaintiff Camacho repeats and realleges each allegation contained in the preceding paragraphs as if incorporated and reiterated herein.

258.    At all relevant times hereto, Plaintiff Camacho and Plaintiff Santos were a married couple, who shared children together, have lived together for an extensive period of time, and have been together for an extended period of time.

259.    Due to his injuries, Plaintiff Santos is unable to provide Plaintiff Camacho with the same love, companionship, comfort, services, and support that he provided prior to the accident.

260.    The injuries to Plaintiff Santos were caused by the Defendants' negligence, excessive force, unreasonable seizure, assault, and battery of Plaintiff Santos by Defendant Comella under color of law.

**COUNT XX**
**LOSS OF SOCIETY**
(Plaintiffs on behalf of their minor children ES, IP, and JS. v. All Defendants)

261.    Plaintiffs -- as next friend and guardian -- on behalf of their minor children ES, IP, and JS repeat and reallege each allegation contained in the preceding paragraphs as if incorporated and reiterated herein.

262.    Due to his injuries, Plaintiff Santos is unable to provide his children with the same love, companionship, comfort, services, and support that he provided prior to the accident.

263.    The injuries to Plaintiff Santos were caused by the Defendants' negligence, excessive force, unreasonable seizure, assault, and battery of Plaintiff Santos by Defendant Comella under color of law.

WHEREFORE, Plaintiffs pray this Honorable Court grant them the following relief, jointly and severally against named Defendants:

a.      Award Plaintiffs all reasonable compensatory damages, including for lost income, medical bills, mental anguish and emotional distress, and any other compensatory damages, for each count alleged in the Complaint;

b.      Award Plaintiff punitive damages against all defendants for each count alleged in the Complaint;

c.      Award Plaintiffs reasonable attorneys' fees, expert fees, and court costs in accordance with 42 U.S.C. § 1988 for the prosecution of his 42 U.S.C. § 1983 claims.

d.      Award Plaintiffs reasonable attorneys' fees and court costs pursuant to federal and state law;

e.      Award Plaintiffs legal interest and costs, plus prejudgment interest pursuant to R.I. Gen. Law §9-21-10; and

f.      Award such other and further relief as this Honorable Court deems right and just.

<u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Plaintiffs,
By their counsel,

/s/ Michael F. Campopiano
Michael F. Campopiano #7853
Law Offices of Michael F. Campopiano, Inc.
21 Douglas Avenue
Providence, RI 02908
(401) 288-3888
mfc@mfclaw.com


/s/ Sonja L. Deyoe
Sonja L. Deyoe #6301
Law Offices of Sonja L. Deyoe
395 Smith Street
Providence, RI 02908
(401) 864-5877
SLD@the-straight-shooter.com

Date: September 5th, 2023

44