```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND


_____
                                   )
EDUARDO SANTOS, LYDIA CAMACHO,     )
EDUARDO SANTOS and LYDIA CAMACHO   )
as Parent and Guardian of E.S.,    )
EDUARDO SANTOS as Parent of J.S.,  )
LYDIA CAMACHO as Parent of I.P.,   )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )    C.A. No. 23-221 WES
                                   )
CITY OF PROVIDENCE, by and         )
through its acting treasurer,      )
Lance Cardillo, STEVEN PARE, in    )
his individual and official        )
capacity, HUGH T. CLEMENTS, in his )
individual and official capacity,  )
SEAN COMELLA, in his individual    )
and official capacity,             )
DEFENSE TECHNOLOGY LLC, and        )
ABC COMPANY, Alias Officers        )
JOHN & JANE DOE, Alias 1-10, in    )
their individual and official      )
capacities,                        )
                                   )
          Defendants.              )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

This civil rights action arises from the severe injuries that Plaintiff Eduardo Santos sustained when a Providence police officer shot him in the face with a less-than-lethal munition. The purported manufacturer of the weapon and munition at issue – Defendant Defense Technology LLC ("Defense Technology") – moves to dismiss the claims against it. See Mot. Dismiss, ECF No. 29.

Defense Technology asserts, inter alia, that the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7903, precludes Plaintiffs' claims.  For the reasons below, the Court GRANTS Defense Technology's Motion.

**I. BACKGROUND**

Like in other cities across the country, thousands of protestors flooded the streets of Providence, Rhode Island in the summer of 2020 following the murder of George Floyd by Minneapolis police officers.  First Am. Compl. ("FAC") ¶ 19, ECF No. 27. During the height of those protests, Providence police officer Sean Comella shot Eduardo Santos – a bystander not involved in the protests - in the face with a less-than-lethal munition, causing Santos to lose his left eye and sustain additional life altering injuries.  Id. ¶¶ 36-38, 48-53.  At the time, Santos and his wife, Lydia Camacho, were video recording the protests from their vehicle located approximately twenty yards from Officer Comella.  Id. ¶¶ 28-30, 45-46.

The shooting occurred in Kennedy Plaza in the early morning hours of June 2, 2020, right when tensions between protestors and police had come to a head.  Id. ¶¶ 24-28.  Plaintiffs allege that, prior to the shooting, they were merely driving through Kennedy Plaza and were not involved in the protests.  Id. ¶¶ 28-29.  As they drove along, Camacho began video recording a group of officers as they chased, tackled, and violently beat a young black man.

Id. ¶¶ 29-30.  While Camacho recorded, Santos shouted to the officers to stop the beating.  Id.  At no point did Santos or Camacho exit the vehicle, threaten the officers, or commit a crime. Id. ¶¶ 30, 45.

Moments later, and without warning, one of those officers – Officer Comella – turned toward the vehicle and fired a kinetic impact projectile ("KIP").[1]  Id. ¶ 36.  The KIP struck Santos's left eye, face, and head, causing his eye and face to erupt; Camacho, who was sitting in the passenger seat, was dosed in blood and other body matter.  Id. ¶¶ 37-38.  As a result, Santos lost his left eye and sustained other severe injuries that required numerous surgeries.  Id. ¶¶ 47-50.  His injuries included a traumatic subarachnoid hemorrhage, extensive facial and cranial fractures, respiratory failure, ruptured globe of the left eye with uveal prolapse, seizures, loss of smell, disfigurement, and other cognitive disorders.  Id. ¶ 47.  Such injuries will require Santos to undergo lifelong medical care.  Id. ¶ 49.

Years later, on May 25, 2023, Santos and Camacho commenced this civil rights case on behalf of themselves and their minor children.  They assert twenty counts against Officer Comella, the City of Providence, the City of Providence Commissioner of Public

---

[1] KIPs are "rubber bullets" or "sponge bullets" that American police departments use as "non-lethal" means for controlling crowds.  First Am. Compl. ("FAC") ¶ 206, ECF No. 27.

Safety Steven Pare, Providence Police Lieutenant James Barros, several unnamed Providence police officers, Defense Technology, and ABC Company. This order solely addresses the four counts that Plaintiffs assert against Defense Technology, which purportedly manufactured and marketed the KIP launcher and KIP that injured Santos.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Said differently, the complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). In reviewing such motions, the court "indulg[es] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

Under this standard, the Court employs a two-step inquiry to determine the plausibility of the claims at issue. DiCristoforo v. Fertility Sols., P.C., 521 F. Supp. 3d 153, 155 (D.R.I. 2021). First, the Court "distinguish[es] 'the complaint's factual allegations (which must be accepted as true) from its conclusory

4

allegations (which need not be credited).'" Id. (quoting García-Catalán, 734 F.3d at 103)).  "Second, the [C]ourt must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citation omitted).  Ultimately, "the plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that the defendant has acted unlawfully."  inMusic Brands, Inc. v. Roland Corp., No. 17-010M, 2017 WL 2416228, at *2 (D.R.I. May 22, 2017) (quoting Twombly, 556 U.S. at 663), adopted by text order (D.R.I. June 9, 2017).

## III. DISCUSSION

Plaintiffs assert claims for failure to warn and for negligent marketing against Defense Technology.  Id. ¶¶ 204-28.  Plaintiffs allege that Defense Technology, as the manufacturer and seller of the weapons and munition at issue,[2] is liable for failing to provide essential safety warnings and for falsely marketing its products.

---

[2] Defense Technology contends that the Court should dismiss Plaintiffs' claims because they do not allege that Officer Comella used Defense Technology's products in the shooting.  Def.'s Mem. Law Supp. Mot. Dismiss ("Def.'s Mem.") 4, ECF No. 29-1.  Although the Amended Complaint is far from a model of clarity on this point, it alleges that Defense Technology manufactured and sold the launcher and KIPs in question to the Providence Police Department.  FAC ¶ 207.  It further states that those products caused Plaintiffs' injuries.  Id. ¶ 219.  Thus, in drawing all reasonable inferences in Plaintiffs' favor, the Court finds that the allegations are sufficient.  See A.C. v. Raimondo, 494 F. Supp. 3d 170, 181 (D.R.I. 2020).

Id. ¶¶ 205, 212.  Specifically, they aver that Defense Technology marketed its products to the Providence Police Department as "non-lethal" means of crowd control and did not warn of their unreasonably dangerous nature, despite knowing that those products had the potential to cause significant injury, disability, or death.  Id. ¶¶ 205-06.

Defense Technology moves to dismiss on the basis that the PLCAA immunizes it from Plaintiffs' claims.  Def.'s Mem. Law Supp. Mot. Dismiss ("Def.'s Mem.") 10-11, ECF No. 29-1.  It contends that Plaintiffs' claims constitute a "qualified civil liability action" under the PLCAA, and moreover, that they do not fall under the PLCAA's product liability exception.  Def.'s Reply Mem. Supp. Mot. Dismiss ("Def.'s Reply") 2-3, ECF No. 33.  The following recitation addresses those arguments and finds that Plaintiffs fail to state a claim for relief.

**A.   Application of PLCAA**

The PLCAA immunizes businesses in the firearm and ammunition industry from "qualified civil liability actions" involving their products.[3]  15 U.S.C. § 7903(5).  Congress enacted the PLCAA in 2005 to shield firearm and ammunition businesses from causes of

---

[3] Plaintiffs assert that the PLCAA serves as a non-jurisdictional defense, rather than a jurisdiction stripping statute.  Pls.' Mem. Opp. Mot. Dismiss ("Pls.' Mem.") 3-5, ECF No. 32-1.  However, the issue is of no import because, as set forth herein, the PLCAA bars each of Plaintiffs' claims against Defense Technology.

6

action stemming from the criminal or unlawful use of their products, particularly when the products function as designed and intended.  15 U.S.C. § 7901(b)(1).  As a result, the Act attempts to protect the First Amendment rights of businesses in the firearm industry, as well as to ensure that citizens have access to a supply of firearms and ammunition for lawful purposes.  Id. § 7901(b)(2), (5).

Although the PLCAA immunizes firearm businesses from qualified civil liability actions, it carves out exceptions for when parties may bring suit.  Travieso v. Glock Inc., 526 F. Supp. 3d 533, 537-38 (D. Ariz. 2021) (citing 15 U.S.C. § 7903(5)(A)(i)-(iv)).  The Court therefore invokes a two-step inquiry to determine the applicability of the PLCAA.  Heikkila v. Kahr Firearms Grp., No. 1:20-CV-02705-MDB, 2022 WL 17960555, at *10 (D. Colo. Dec. 27, 2022).  First, it determines whether the claims constitute a qualified civil liability action.  Id.  Second, the Court examines whether any of the PLCAA's exceptions apply.  Id.; Ryan v. Hughes-Ortiz, 959 N.E.2d 1000, 1007 (Mass. App. Ct. 2012).

    1. PLCAA's General Prohibition on Qualified Civil Liability Actions

A "qualified civil liability action" includes claims "brought by any person against a manufacturer . . . of a qualified product . . . resulting from the criminal or unlawful use of a qualified product by the person or a third party."  15 U.S.C. § 7903(5)(A).

7

Defense Technology contends that Plaintiffs' claims constitute a qualified civil liability action because Officer Comella unlawfully used the weapons and munition when he shot Santos. Def.'s Mem. 11; Def.'s Reply 5-6. Because there is no dispute that the KIPs and KIP launchers are qualified products,[4] the Court need only address whether Officer Comella used those products in a criminal or unlawful manner. See Ryan, 959 N.E. 2d at 1007.

The Court agrees that Officer Comella's use of the KIPs and KIP launcher was unlawful. "Unlawful misuse" is a term of art under the PLCAA that encompasses "conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product."[5] 15 U.S.C. § 7903(9). Here, the Amended Complaint expressly alleges that Officer Comella used excessive force against Santos, which violated his constitutional rights.[6] FAC ¶¶

---

[4] A "qualified product" is "a firearm . . ., or ammunition, . . . or a component part of a firearm or ammunition, that has been shipped or transported in interstate of foreign commerce." 15 U.S.C. § 7903(4).

[5] Notably, the PLCAA's general prohibition may apply even when the user of the firearm did not act with criminal intent and was never convicted of a crime. Heikkila v. Kahr Firearms Grp., No. 1:20-CV-02705-MDB, 2022 WL 17960555, at *10 (D. Colo. Dec. 27, 2022); Adames v. Sheahan, 909 N.E.2d 742, 761-62 (Ill. 2009).

[6] Moreover, as Defense Technology correctly points out, Plaintiffs allege that Officer Comella purposefully shot an innocent bystander without warning or justification, FAC ¶ 36, which would violate numerous Rhode Island criminal statutes. See Def.'s Reply Mem. Supp. Mot. Dismiss ("Def.'s Reply") 4-6, ECF No. 33 (citing R.I. Gen. Laws § 11-5-2 (felony assault), R.I. Gen.

133-54. Thus, because the Court must assume that those allegations are true, Plaintiffs' claims under 42 U.S.C. § 1983 trigger the PLCAA's general prohibition on qualified civil liability actions.[7] See Doyle v. Combined Sys., Inc., No. 3:22-CV-01536-K, 2023 WL 5945857, at *7 (N.D. Tex. Sept. 11, 2023) (holding that plaintiffs' allegations that "officers violated 42 U.S.C. § 1983 by shooting and injuring them" subjected the claims to the PLCAA's general prohibition).

Accordingly, the PLCAA bars Plaintiffs' claims against Defense Technology unless an exception to the general prohibition on qualified civil liability actions applies.

### 2. PLCAA's Product Liability Exception

Plaintiffs state that, even if the PLCAA's general prohibition applies, the Act's product liability exception rescues their claims. Pls.' Mem. Opp. Mot. Dismiss ("Pls.' Mem.") 6, ECF No. 32-1. The exception states that a qualified civil liability action does not include claims "resulting directly from a defect

---

Laws § 11-5-2.2 (battery – criminal negligence), and R.I. Gen. Laws § 11-5-5 (simple assault or battery)).

[7] Plaintiffs contend, without any supporting authority, that the Court may not rely on their 42 U.S.C. § 1983 allegations because a jury could find that Officer Comella did not violate Santos' constitutional rights. Pls.' Mem. 6. However, Plaintiffs cannot have their cake and eat it too. At the pleadings stage, the Court must assume that all well-plead allegations are true. Geigus v. Hayes, No. CA 14-490L, 2015 WL 906689, at *2 (D.R.I. Mar. 3, 2015).

9

in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner."  15 U.S.C. § 7903(5)(A)(v). Defense Technology, however, contends that the exception does not cover failure to warn and negligent marketing claims.  Def.'s Reply 3.

The Court holds that Plaintiffs' claims are not subject to the PLCAA's product liability exception.  The Court adopts the rationale in Travieso v. Glock Inc.[8]  See 526 F. Supp. 3d at 545. There, the court noted that product liability claims generally rely on one of three theories: 1) design defects; 2) manufacturing defects; or 3) defects based on inadequate warnings.  Id. (citing Restatement (Third) of Torts: Products Liability, § 2). Nonetheless, the PLCAA's product liability exception only includes "damage resulting directly from a defect in design or manufacture of the product."  Id. (quoting 15 U.S.C. § 7903(5)(A)(v)).  The court therefore held that the exception did not apply, reasoning that "[t]he fact that Congress carved out an exception specifically allowing cases based on defective design and manufacture without

---

[8] Plaintiffs do not provide any authority in support of their position that the product liability exception extends to failure to warn and negligent marketing claims.  See Pls.' Mem. 6. The Court is unaware of any cases, other than Travieso v. Glock Inc., 526 F. Supp. 3d 533 (D. Ariz. 2021), that directly address this issue.  Cf. Doyle v. Combined Sys., Inc., No. 3:22-CV-01536-K, 2023 WL 5945857, at *6 (N.D. Tex. Sept. 11, 2023) (holding that the PLCAA barred a failure to warn claim without determining whether the products liability exception rescued the claim).

10

creating a similar exception for 'information defect' and 'inadequate warning' claims only lead this Court to presume the omission was intentional." Id.

Further, even if the product liability exception included failure to warn and negligent marketing claims, Officer Comella's purported use of the KIPs and KIP launcher constitutes a criminal offense. The product liability exception does not encompass claims "where the discharge of the product was caused by a volitional act that constituted a criminal offense." 15 U.S.C. § 7903(5)(A)(v). The inquiry centers on the criminal nature of the volitional act, rather than on whether the user of the firearm was charged or convicted of an offense. Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., 633 F. Supp. 3d 425, 450 n.12 (D. Mass 2022), rev'd on other grounds, 91 F.4th 511 (1st Cir. 2024).

Plaintiffs allege that Officer Comella purposefully aimed and fired a KIP at Santos, who was an innocent bystander, without warning. FAC ¶ 36. Such conduct falls well within the ambit of a criminal offense. Indeed, the alleged intentional shooting without justification in this case is even more troubling than the unintentional shootings that have triggered the criminal offense exception in other PLCAA cases. See, e.g., Travieso, 526 F. Supp. 3d at 536, 548 (ruling that the criminal offense exception applied when a minor, who did not believe a firearm was loaded, took possession of the firearm and pulled the trigger while pointing it

11

at another person); Adames, 909 N.E.2d at 723-24, 763 (holding that a minor's unintentional shooting of another individual was a criminal offense under the PLCAA); see also, Ryan, 959 N.E.2d at 1008-09 (finding that unlawful possession of a firearm constituted a criminal offense that caused the discharge of the firearm). Moreover, the Amended Complaint asserts counts under 42 U.S.C. § 1983 based on theories of assault, battery, and mayhem, all of which are criminal offenses under Rhode Island law. FAC ¶¶ 229-45; see R.I. Gen. Laws § 11-5-2 (felony assault); R.I. Gen. Laws § 11-5-2.2 (battery – criminal negligence); R.I. Gen. Laws § 11-29-1 (mayhem).

Accordingly, the PLCAA precludes Counts XII and XIII against Defense Technology. Because the PLCAA bars the underlying claims, the Court also dismisses the derivative counts against Defense Technology for Loss of Consortium (Count XIX) and Loss of Society (Count XX).[9]

---

[9] Consortium and loss of society are derivative claims that hinge on the success of the impaired party's underlying claims. See Malinou v. Miriam Hosp., 24 A.3d 497, 511-12 (R.I. 2011) (dismissing a loss of society claim when there was not sufficient evidence to support the underlying claims); Sama v. Cardi Corp., 569 A.2d 432, 433 (R.I. 1990) (dismissing a consortium claim because the spouse did not succeed on the underlying claims).

12

**IV. CONCLUSION**

For the foregoing reasons, Defense Technology's Motion to Dismiss, ECF No. 29, is GRANTED.

IT IS SO ORDERED.

/s/ WESmith
William E. Smith
District Judge
Date: March 20, 2024